UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANK GANGI, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | CIVIL ACTION NO. |
| | ) | 14-10114-DPW |
| | ) | |
| v. | ) | Consolidated with |
| | ) | 14-10115-DPW |
| UNITED STATES OF AMERICA, | ) | 14-10116-DPW |
| | ) | 14-10117-DPW |
| Respondent. | ) | |

MEMORANDUM AND ORDER
March 4, 2014

The Internal Revenue Service is engaged in an investigation to determine whether Frank Gangi, one of the petitioners before me, owes federal income tax liability for the years 2000 through 2004. As part of that investigation, the IRS has issued four summonses to third parties located in Massachusetts.

The petitioners have filed petitions seeking to quash each of these summonses, contending, among other things, that the IRS's investigation is being conducted for an improper purpose and in bad faith. I reject the petitioners' contentions and will enforce the summonses.

## I. BACKGROUND

### A. *The Four Summonses*

The IRS issued the first summons on February 25, 2010 to Edward Taylor, an accountant at the firm Nardella & Taylor, seeking testimony and documents related to Mr. Gangi as well as

-1-

Ferrous Miner Holdings, Ltd., BABP VI LLC, Global NAPS, Inc., and other controlled entities of Mr. Gangi.  The second and third summonses were issued on April 12, 2010 to John O. Postl and South Coastal Bank.  The Postl summons seeks documents and testimony relating to the same entities as the Taylor summons and additionally Chesapeake Investment Services, Inc.  The South Coastal summons seeks documents and testimony relating to Mr. Gangi, BABP VI, LLC and any controlled entities.  The documents sought in the Taylor, Postl, and South Coastal Bank summonses include financial and tax records, meeting records, and other information relevant to Mr. Gangi's residency and income.

The fourth summons was issued to E. Oliver Fowlkes seeking documents relating to Mr. Gangi's attempts to adopt a child, his residency in the U.S. Virgin Islands, his residential and business addresses and contact information, meetings with Mr. Gangi, and services provided by Mr. Fowlkes to Mr. Gangi.

Mr. Gangi, Ferrous Miner, BABP VI, Global NAPS, and Chesapeake filed petitions to quash the Taylor and Postl summonses on March 18 and April 27, 2010, respectively.  On June 10, 2010 and September 30, 2010, the United States filed oppositions to the petitions to quash and motions to enforce the summonses.

Mr. Gangi et al. also filed petitions to quash the South Coastal Bank and Fowlkes summonses on May 5, 2010 and May 18,

-2-

2010.  Before the lapse of the sixty-day response period provided
to the United States under Federal Rule of Civil Procedure
12(a)(2), another judge of this the Court granted the petitions
to quash because no timely opposition had been filed under the
Court's local rules.  The United States has filed motions to
vacate the grant of the petitions, to deny the petitions, and to
enforce the summonses in both cases.

The petitions were consolidated to me as the judge to whom
the first-filed petition was assigned on April 10, 2012 on the
Court's Miscellaneous Business Docket where they were originally
filed.

As a result of misunderstandings regarding the proper
protocol to be followed in the Clerk's Office when summons
enforcement is contested, the matters did not come to my
attention for decision until the government moved for an
expedited hearing on the outstanding motions.  After directing
the designation of these matters as contested civil cases and
transferring the cases from the miscellaneous business docket to
the regular civil docket, I afforded the parties an opportunity
for further updated briefing.

**B.    *The New Jersey and Kansas Summonses***

In addition to the present litigation,  Mr. Gangi filed
petitions challenging IRS summonses in District Courts in New
Jersey and Kansas, raising many of the same arguments he presents

-3-

to this court. *See Gangi* v. *United States*, 2011 WL 765883 (D. Kan. Feb. 25, 2011); *Gangi* v. *United States*, 2011 WL 1363816 (D.N.J. Jan. 7, 2011), *aff'd Gangi* v. *United States*, 453 Fed. Appx. 255 (3rd Cir. 2011).

Both the New Jersey and Kansas District courts evaluated Mr. Gangi's challenge under the *Powell* standard (described below), and found that the IRS investigation relating to Mr. Gangi's federal tax liability was being conducted pursuant to a proper purpose, that the information sought in the summons was relevant to that purpose, that the information sought was not within the IRS's possession, and that the summonses had been issued in good faith and not as an abuse of process.

In the Kansas case, the court also determined that the IRS had followed all legally required administrative steps and so denied the petition to quash and required enforcement of the summons. *Gangi*, 2011 WL 765883, at *5. In the New Jersey case, the court determined that the IRS had failed to give proper advance notice of contact with third parties to certain of the petitioners, as required by 26 U.S.C. § 7602(c), and, accordingly limited the enforcement of the summonses as to those petitioners. *Gangi*, 2011 WL 1363816, at *7-9. The court otherwise denied the petition to quash and required enforcement of the summonses, *id.*, after which the Third Circuit affirmed.

-4-

## II. ANALYSIS

### A.   *Legal Standard*

The investigative power of the IRS is structured in part by 26 U.S.C. § 7602.  Section 7602(a) authorizes the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability."  Pursuant to this provision, the IRS may "examine any books, papers, records, or other data which may be relevant or material to such inquiry."  26 U.S.C. § 7602(a)(1).

Taxpayers may file a petition seeking to quash an IRS summons and the IRS may file a petition seeking its enforcement. 26 U.S.C. §§ 7604, 7606.  Enforcement proceedings concerning an IRS summons are designed to be summary in nature, *Sugarloaf Funding, LLC* v. *U.S. Dep't of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (citation omitted), and the court's role in such a proceeding "is to ensure that the IRS is using its broad authority in good faith and in compliance with the law."  *United States* v. *Gertner*, 65 F.3d 963, 966 (1st Cir. 1995).  When a challenge to a summons is filed, the government must satisfy the court that "(1) its investigation is being conducted pursuant to a proper purpose, (2) the information sought in the summons is (or may be) relevant to that purpose, (3) the information is not

already within the IRS's possession, and (4) all legally required administrative steps have been followed."  *Id.* (citing *United States* v. *Powell*, 379 U.S. 48, 57-58 (1964)).

The First Circuit has established a "three-tiered framework" for determining whether the IRS has satisfied the *Powell* factors and a summons is enforceable.  *Id.*

First, the government must make a prima facie showing that it is acting in good faith and for a lawful purpose.  An affidavit from the investigating agent attesting to the satisfaction of the *Powell* elements is sufficient to meet this initial burden.  *Id.* (citations omitted).  After this minimal showing by the IRS, the burden shifts to the taxpayer to rebut the good-faith presumption arising from the government's prima facie showing.  *Id.* at 967.

Next, the taxpayer may rebut the prima facie case by disproving any one of the four *Powell* factors or by showing--more generally--that enforcement of the IRS summons would constitute an abuse of the court's process.  *Sugarloaf*, 584 F.3d at 346. The taxpayer's burden at this stage is "heavy" requiring that he "allege specific facts and evidence to support his allegations." *Id.* (quoting *Sterling Trading, LLC* v. *United States*, 553 F. Supp. 2d. 1152, 1156 (C.D. Cal. 2008)).

Finally, if the petitioner makes a sufficient showing, the proceeding advances to the third-tier at which the court "weighs

the facts, draws inferences, and decides the issue." *Gertner*, 65 F.3d at 967.  To do this, a court may hold an evidentiary hearing, taking testimony and exhibits from both sides.  A hearing is not necessary, however, and, in appropriate circumstances, a court may forgo such a hearing and decide the issues on the existing record.  *Id.*  These matters present such a circumstance.

**B.     *The Government Has Made The Necessary Prima Facie Showing***

In support of its motion to enforce the summonses, the government has submitted an affidavit from Ulviya N. Mamedova, an IRS agent, attesting to the government's satisfaction of the *Powell* factors.[1]

First, Ms. Mamedova sets forth the purpose for the government's investigation, explaining that the IRS suspects that Mr. Gangi may have participated in a scheme to avoid U.S. taxation and claim a tax benefit under the laws of the United States Virgin Islands by claiming to be a resident there.  Based upon this suspicion, the IRS is investigating whether Mr. Gangi

---

[1] In support of its earlier motions to deny the petitions to quash the summonses issued to Mr. Taylor and Mr. Postl, the government submitted affidavits from another IRS agent, Jackie Moss, who has since accepted employment in a different capacity. The petitioners have contended that these affidavits were insufficient to carry the government's burden both because they were stale and because no affidavits had been submitted in regard to the South Coastal Bank or Fowlkes summonses.  The affidavit submitted by Ms. Mamedova, the new agent with responsibilities for the investigation, puts these issues to rest.

maintained a legal residence in the U.S. Virgin Islands for the years 2000 to 2004, whether he accurately reported all of his income and sources of income on returns that he filed with the U.S. Virgin Island tax authorities, and whether he fully paid his tax liabilities to the U.S. Virgin Islands. As the New Jersey District Court explained in evaluating another petition to quash relating to Mr. Gangi, such an investigation is a proper purpose: "The IRS has asserted a legitimate investigatory purpose—to determine whether or not Mr. Gangi was a *bona fide* resident of the Virgin Islands for purposes of determining whether or not he satisfied his federal income tax liabilities." *Gangi*, 2011 WL 1363816, at *5.

Second, Ms. Mamedova describes the categories of documents and testimony sought, and asserts that such discovery may be relevant or material to the investigation. Third, she asserts that the information sought in the summonses is not already in the possession of the IRS. Fourth, she asserts that the IRS has followed the necessary administrative steps required for the issuance of the summonses, and, in particular, that Mr. Gangi received advance notice of the third party contact in accordance with 28 U.S.C. § 7602(c) and that the summons is not part of an unnecessary examination or investigation within the meaning of 26 U.S.C. § 7605(b). These assertions are sufficient to meet the government's prima facie burden. *See United States* v. *Chen*, 952

F. Supp. 2d 321, 326 (D. Mass. 2013) ("[T]he IRS may satisfy the
burden by asserting in the 'affidavit of the investigating agent
that the requirements are satisfied.'") (citing *United States* v.
*Lawn Builders of New Eng., Inc.*, 856 F.2d 388, 392 (1st Cir.
1988)); *Sugarloaf*, 584 F.3d at 347 (The government need only
provide "bareboned allegations . . . to support the prima facie
showing.").

**C.   The Petitioners Have Not Rebutted the Government's Prima
Facie Evidence That the IRS Has Satisfied the *Powell* Factors**

The petitioners attack the validity of the summonses and
challenge the government's satisfaction of the *Powell* factors on
several grounds.

1.   Whether the Summonses are Issued for a Proper Purpose

The petitioners contend that the summonses cannot be issued
for a proper purpose because the statute of limitations under 26
U.S.C. § 6501, providing that "the amount of any tax imposed by
this title shall be assessed within 3 years after the return was
filed," has run on the tax years 2000 through 2004, and so,
because the IRS may no longer pursue any deficiency, an
investigation into the existence of such a deficiency is
improper.  This contention has been roundly rejected by the
numerous courts that have addressed it.

As the Third Circuit explained in the New Jersey enforcement
action involving Mr. Gangi: "*Powell* . . . makes it clear that the
statute of limitations applies only to assessments of taxes, not

to summonses or other investigative procedures." *Gangi*, 453 Fed.
Appx. at 257 (citing *Powell*, 379 U.S. at 57).  "Since the dispute
in this case concerns summonses and not assessments, the § 6501
statute of limitations upon which Gangi relies is inapplicable to
the summonses at issue." *Id.  See also Day* v. *United States*,
2011 WL 4345897 at *3 (D. Colo. Sept. 16, 2011) ("This [§ 6501
statute of limitations] applies only to an assessment, not to the
issuance of a summons or to an investigation."); *United States* v.
*McHenry*, 552 F. Supp. 2d 571, 574 (E.D.Va. 2008) ("The three-year
statute of limitations contained in 26 U.S.C. § 6501(a) plainly
applies only to assessment, not to summons or any other
investigatory procedure.").  This distinction was recognized in
the Kansas enforcement action involving Mr. Gangi: "[T]he IRC
statute of limitations applies to assessments of taxes, not to
the IRS's investigative tools, like summonses." *Gangi*, 2011 WL
765883, at *3.

Nothing in the Tax Court's recent decision in *Appleton* v.
*Commissioner of Internal Revenue*, 140 T.C. No. 14 (Tax Ct. 2013)
alters this analysis.  As noted above, 26 U.S.C. § 6501(a)
provides that "the amount of any tax imposed by this title shall
be assessed within 3 years after the return was filed."  In
*Appleton*, the Tax Court held that the filing of a return with the
Virgin Islands Bureau of Internal Revenue by the taxpayer in that
case, who the court determined was a *bona fide* resident of the

U.S. Virgin Islands, triggered the running of this limitations period.  Accordingly, a notice of deficiency (not a summons), issued by the IRS more than three years after the filing of the return was untimely.  As the multiple cases cited above demonstrate, however, the § 6501 limitations period is simply inapplicable to a summons--regardless of whether that rule might bar assessment of a deficiency against the taxpayer (as the Tax Court held in *Appleton*).  *Appleton*, which addresses the assessment of a deficiency against a Virgin Island resident-taxpayer, does not address and is irrelevant to the issue here, which is the validity of a summons issued after the limitations period has run.[2]

---

[2] The Third Circuit's decision in *Vento* v. *Director of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455 (3rd Cir. 2013) is inapposite for similar reasons.  That case addressed the standards for determining whether individuals were *bona fide* residents of the U.S. Virgin Islands, a determination which might affect whether Mr. Gangi correctly filed his return with the Virgin Islands Bureau of Internal Revenue and the running of the statute of limitations.  But *Vento* does not affect the scope of the IRS' investigatory powers.

Likewise, the Eleventh Circuit's recent decision in *Huff* v. *Commissioner of the Internal Revenue Service*, 2014 WL 642855, --- F.3d ---, (11th Cir. Feb 20, 2014), does not address the scope of the IRS's investigatory powers.  Rather, in that case, the Eleventh Circuit reversed the Tax Court's denial of the Virgin Island's petition to intervene in a Tax Court proceeding initiated by taxpayers who had received notices of deficiency from the IRS.  The Eleventh Circuit recognized the Virgin Island's interest in intervening in tax cases involving individuals who file taxes with the Virgin Islands: "If the Tax Court eventually determines that the Taxpayers were not bona fide residents, one of three things will occur: the IRS may ask the Virgin Islands to transfer over the portion of taxes that should

In addition, *Appleton* is distinguishable for another reason. Under Section 6501, the filing of the taxpayer's tax return triggers the running of the limitations period.  The term "return" is defined to "mean[] the return required to be filed by the taxpayer."  26 U.S.C. § 6501(a).  If a taxpayer fails to file the proper return "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."  26 U.S.C. § 6501(c)(3).  In *Appleton*, the Tax Court relied on its finding that the taxpayer was a *bona fide* U.S. Virgin Island resident to hold that the filing of a return with the Virgin Islands Bureau of Internal Revenue triggered the running of the limitations period under § 6501(a).

The IRS investigation of Mr. Gangi seeks to determine whether Mr. Gangi filed the required return based upon his actual residency--a necessary factual predicate to determine whether the statute of limitations has run.  As the *Appleton* court explained:

---

have been paid to the United States; the Virgin Islands may choose to voluntarily refund the 'overpaid' taxes as a matter of fairness; or the Virgin Islands may be forced to accept that the Taxpayers paid taxes twice on the same income. Thus, the Virgin Islands has an interest in the Tax Court proceedings."  *Id.* at *6.  However, that opinion nowhere discusses the scope of the IRS's investigatory power, nor does it deny that, if the taxpayers were determined not to be *bona fide* Virgin Island residents, they would still have been required to file tax returns with the IRS in order to trigger the § 6501(a) statute of limitations: "The IRS claims that the Taxpayers' [Virgin Island] returns did not start the § 6501 limitations period because they should have also filed a return with the IRS.  But the Taxpayers only had to file a return with the IRS if the allegations in the IRS deficiency notices are true."  *Id.*

"[W]e must determine whether the Forms 1040 filed by petitioner with the [Virgin Islands] were the returns required to be filed and, if so, were they properly filed?  Unless the answers to both of these questions are in the affirmative, pursuant to section 6501(c)(3) tax may be assessed against petitioner at any time." *Appleton*, 140 T.C. No. 14, at *6.  The IRS is investigating precisely the fact identified by the *Appleton* court as necessary to make its determination--whether Mr. Gangi filed the tax return he was required to file in order to trigger the running of the limitations period.

In a further contention regarding the statute of limitations, the petitioners argue that the IRS's policy adopted in IRS Notice 2007-19--which provides for different statute of limitations treatment for individuals with gross income above and below $75,000--represents an unfair treatment of higher income individuals, violates constitutional requirements, and demonstrates bad faith on the IRS' part.  Like the Section 6501 statute of limitations arguments more generally, however, these are arguments applicable to any future IRS assessment action, but do not affect the scope of the IRS's investigatory powers.  *See Gangi*, 2011 WL 1363816, at *5 ("Should the IRS ultimately seek to assess tax penalties in the future, Petitioners will then have the opportunity to assert these constitutional and statutory defenses, and the court will then have the opportunity to

determine whether the IRS's conduct deprived Petitioners of their constitutional and statutory rights.").

> ### 2.    The Relevance of the Requested Documents

The petitioners also contend that the information sought in the summons is not relevant to a proper purpose.  As stated above, the government may satisfy its prima facie burden by providing a barebones affidavit attesting to the satisfaction of the *Powell* factors, including the requirement that "the information sought in the summons is (or may be) relevant to [a proper] purpose," *Gertner*, 65 F.3d at 966, which the government has done.  The burden, therefore, has shifted to the petitioners requiring that they "allege specific facts and evidence" to rebut the government's assertions.  *Sugarloaf*, 584 F.3d at 346.  The petitioners have not done so.

"[T]he concept of relevance under § 7602 is broader than that under the Federal Rules of Evidence" and "the IRS may investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 347 (citations omitted).  The requested documents, which include financial and other records, materials relating to Mr. Gangi's business and residential addresses and contact information, and other similar documents plainly bear upon both Mr. Gangi's residence and his sources and amount of income--which are

relevant to an investigation of Mr. Gangi's potential tax liability.[3]

This relevance satisfies the second of the *Powell* factors. *See Day*, 2011 WL 4345897 at *4 ("The records sought need not be dispositive as to Mr. Day's residence or tax liability; they need only bear on where his income comes from, how he disposes of funds of his entities and whether this is consistent with his claimed status and income sources.  Bank records showing transfers, credits/deposits and debits/withdrawals provide information about these issues, as do cancelled checks."); *Elmes* v. *United States*, 264 Fed. Appx. 776, 779 (11th Cir. 2008) (per curiam) ("For example, [Petitioner's] financial records may demonstrate that he conducts all, or a great majority of, his banking in Florida, rather than in the Virgin Islands. Similarly, his credit card statements may highlight the restaurants he frequents, the dry cleaners he uses, and a host of other transactions relevant to where he actually resides. Accordingly, Elmes has not met his 'heavy' burden of refuting the Government's

---

[3] In the tax context, "residency requires 'far less than domicile,' but still must be more than a transient or sojourner." *Vento*, 715 F.3d at 466.  *Vento* lists eleven factors to determine whether a taxpayer's claimed residency is bona fide.  *Id.*  These factors are broad and include the taxpayer's physical presence in the country of claimed residence, social, family, and professional relationships, and assumption of economic burdens and payment of taxes to the foreign country.  *Id.* at 466-67.  The materials sought are relevant to such a broad-based inquiry.

prima facie showing that the summonses were relevant to a determination of his residency.").

### 3.   Whether the Documents are in Possession of the IRS

The petitioners make only a limited challenge based upon the third *Powell* factor, arguing that the request in the Taylor summons for tax returns seeks information that the IRS already possesses.  The IRS summons, however, seeks not only the returns, but related workpapers, drafts, and similar documents, which are not within the IRS's possession.  Moreover, even if some of the produced documents duplicate materials that the IRS already possesses, "the IRS is entitled to obtain relevant records from third parties to compare for accuracy any records obtained from the taxpayer." *Sugarloaf*, 584 F.3d at 350.  *See also Sterling*, 553 F. Supp. 2d at 1161 ("a 'thorough investigation' can involve 'review [of] records of the same ... transactions maintained by ... third-party recordkeepers, in order to ascertain whether the information in each set of documents is consistent.'") (citation omitted).

### 4.   Whether the IRS has Complied with Required Administrative Steps

IRC § 7602(c) provides, in pertinent part:

An officer or employee of the Internal Revenue Service
may not contact any person other than the taxpayer with
respect to the determination or collection of the tax
liability of such taxpayer without providing reasonable
notice in advance to the taxpayer that contacts with
persons other than the taxpayer may be made.

The petitioners contend that the government has failed to meet this requirement.  As they explain, the audit notice for Chesapeake was dated April 6, 2010, and required a response by April 13, 2010.  The summonses were issued on April 12, 2010.[4] The petitioners contend that the government has violated § 7602(c) by proceeding in this fashion.

As the timeline set forth by the petitioners demonstrates, they had notice of the audit six days prior to the issuance of the April 12, 2010 summonses.  And the audit notice included IRS Publication 1, which makes clear that the IRS may contact third parties regarding the examination:

> Generally, the IRS will deal directly with you or your duly authorized representative.  However, we sometimes talk with other persons if we need information you have been unable to provide, or to verify information we have received.  If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name.  The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking.  Our need to contact other persons may continue as long as there is activity in your case.  If we do contact other persons, you have the right to request a list of those contacted.

This notice, six days prior to the issuance of the summons, is sufficient to satisfy § 7602(c).[5]

---

[4] The petitioners appear not to challenge the proposition that notice was provided in a timely fashion to the appropriate parties prior to issuance of the Taylor summons on February 25, 2010.

[5] The petitioners do not appear to contend that the form of the notice--an examination letter with IRS Publication 1

The petitioners contend that these circumstances are identical to those which led the New Jersey District to limit enforcement of the summonses as to certain petitioners who had not received timely notice.  The petitioners' reliance on the District of New Jersey's opinion, however, is unfounded.  In that case, the notices of audit were received by BABP and Ferrous Miner contemporaneously with the issuance of the summonses (both on February 2, 2010).  *Gangi*, 2011 WL 1363816, at *7.  The District Court found that contemporaneous notice was insufficient to satisfy the requirements of § 7602(c).  *Id.*  That is a far cry from the present circumstance in which notice was provided to Chesapeake six days prior to issuance of the summonses.  IRC § 7602(c) requires only that the IRS "provid[e] reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made."  The IRS provided such advance notice to the petitioners.

In addition to challenging IRS's compliance with the notice requirements of § 7602(c), the petitioners also contend that the IRS has violated 26 U.S.C. § 7605(b), which provides that:

> No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

---

attached--was insufficient.

The petitioners argue that the continued pursuit of an examination for tax years closing more than nine years ago constitutes an "unnecessary examination."[6]  This argument, however, is simply a recasting of the statute of limitations argument above.  And, as described above, that argument has been soundly rejected by a number of courts.

    5.   <u>Whether the IRS is Acting in Bad Faith</u>

The petitioners argue that the IRS is acting in bad faith with regard to the investigation of the returns of high-income individuals claiming to be residents of the Virgin Islands.

The petitioners specifically point to IRS Notices 2007-19 and 2007-31 as demonstrating that the IRS is acting in a capricious and unfair manner towards Virgin Island residents in Mr. Gangi's situation.  IRS Notice 2007-19 provided that the running of the statute of limitations under § 6501(a) would be triggered by the filing of a Virgin Islands tax return if the taxpayer has a gross income of less than $75,000, but not if the

---

[6] The responsibility for such delay in the course of this examination as relates to the resolution of the enforceability of the summonses under consideration before me lies with this court. The necessary docketing protocols for contested summons enforcement matters were not followed leading to the delay.  *See* Section 1A *supra*.  This resulted in a failure to address the substance of the dispute in a more timely fashion.  But delay caused by the court, regardless of its inconvenience to either party, does not affect the validity of the summons, which is evaluated as of the time of issuance.  *See, e.g., Villareal* v. *United States*, 524 Fed. Appx. 419, 425 (10th Cir. 2013); *United States* v. *Richey*, 632 F.3d 559, 564 (9th Cir. 2011).

taxpayer's gross income was above this threshold.  IRS Notice 2007-31, issued subsequently, eliminated the income-based distinction for tax years 2006 and later by providing that the filing of a Virgin Island return by *bona fide* Virgin Island residents would begin the running of the limitations period regardless of the taxpayer's income-level.  In support of their bad-faith contentions, the petitioners refer to the statements of Nina Olsen, the 2009 IRS Taxpayer Advocate, that "the IRS has singled out a small group of USVI taxpayers for special treatment--the very types of high income taxpayers that federal tax incentives are seeking to attract to the USVI--by effectively eliminating the [statute of limitations] applicable to them but not the [statute of limitations] applicable to other similarly situated taxpayers."

These arguments were presented to both the New Jersey and Kansas District Courts.  The New Jersey court rejected the argument (in language subsequently quoted by the Kansas court):

> Other than the length of the investigation (five years), Petitioners have presented no evidence that the IRS has conducted its investigation of Petitioners with an improper purpose, such as harassment. Instead, Petitioners arguments, if correct, would invalidate any IRS summons issued pursuant to these policies to investigate tax anomalies in the Virgin Islands. Such a position does not present a non-frivolous claim of abuse-of-process, but challenges the IRS' investigatory discretion.... The Court finds that Petitioners' "institutional bad faith" arguments are premature.

*Gangi*, 2011 WL 1363816, at *5;[7] *Gangi*, 2011 WL 765883, at *5.

The Supreme Court in *Powell* explained what is meant by abuse of process in the context of the issuance of an IRS summons: "[A]n abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. The petitioners have not demonstrated the existence of bad faith. Instead, they have pointed out their disagreements with the enforcement and investigatory policies of the IRS. The petitioners may voice these disagreements in opposition to any proceeding by the IRS to collect on any deficiency the IRS contends exists. But such a

---

[7] In affirming the District Court's opinion, the Third Circuit explained:

> Gangi has failed to present evidence that the IRS acted in bad faith. The IRS has asserted a legitimate investigatory purpose—to determine whether Gangi was a bona fide resident of the Virgin Islands and thus whether he has satisfied his tax liabilities. As the District Court has noted, the TSA Report, on which Gangi relies, presents tax policy arguments rather than any evidence of institutional bad faith, which is a legal standard . . . . Furthermore, because the statute of limitations does not preclude summonses, the constitutional challenge presented by Gangi is not relevant to the question of whether the IRS acted in bad faith in issuing the summonses. Accordingly, the IRS's issuance of the summonses does not constitute institutional bad faith.

*Gangi*, 453 Fed. Appx. at 258.

disagreement does not demonstrate bad faith and does not warrant quashing the IRS's summonses and curbing the IRS's investigatory powers.

### III.   THE PRECLUSIVE EFFECT OF THE NEW JERSEY AND KANSAS JUDGMENTS

Although I have determined I will authorize enforcement of the summonses on the merits, for the sake of completeness, I will also address the preclusive effect of the New Jersey and Kansas judgments on this case.

"[I]ssue preclusion may be applied to bar relitigation of an issue decided in an earlier action where: (1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment." *Mangella* v. *Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012).

Both the Kansas and New Jersey actions have reached a final judgment, satisfying the third prong of the preclusion test. Likewise, the determination of whether the summons was issued in good faith and in accordance with the *Powell* factors was a finding necessary to the denials by the Kansas and New Jersey courts of the request to quash the summonses--if the government had failed to satisfy any of those requirements, the summonses would necessarily need to be quashed.  Accordingly, the fourth prong of the preclusion test is satisfied.

The remaining questions are whether issues raised in Kansas and New Jersey actions are the same as those raised in the present case, and whether those issues were actually litigated in the earlier cases. A review of the Kansas and New Jersey opinions demonstrates that some, but not all, of the issues raised by the petitioners here were litigated and conclusively decided in the previous cases.

First, both the Kansas and New Jersey courts clearly determined that the IRS's investigation of Mr. Gangi's tax liability--even as late as 2010, the date of the issuance of the summonses here--constitutes a "proper purpose" satisfying the first of the *Powell* factors: "The IRS has asserted a legitimate investigatory purpose—to determine whether or not Mr. Gangi was a bona fide resident of the Virgin Islands for purposes of determining whether or not he satisfied his federal income tax liabilities." *Gangi*, 2011 WL 1363816, at *5. *See also Gangi*, 2011 WL 765883, at *3 ("[I]n this case, the government is investigating whether Gangi was a bona fide resident of the USVI for the tax years in question. If he was not a bona fide resident of USVI, he failed to file a return. As such, there appears to be a legitimate purpose for the issuance of the summons.").

Similarly, the challenge posed by the petitioners to the good faith of the IRS's investigation has been fully resolved adversely to the petitioners in the two prior cases. The

-23-

petitioners presented the same arguments in those cases as they have here, contending that the IRS Notices 2007-19 and 2007-31 demonstrate the IRS's capriciousness and bad fath, and pointing to the same statements from the report of the Taxpayer Advocate to Congress regarding the treatment of Virgin Island tax-filers. Both the New Jersey and Kansas courts rejected these arguments. *See Gangi*, 2011 WL 1363816, at *5 ("Petitioners have not persuaded the Court that the IRS acted in bad faith with regard to its investigation of Petitioners."); *Gangi*, 2011 WL 765883, at *5 ("This Court . . . cannot conclude that Petitioners have met their heavy burden in demonstrating institutional bad faith and an abuse of the court's process. As such, Petitioners have not established a valid defense to the administrative summons.").

The petitioners are precluded from re-litigating the propriety of the IRS's purpose in investigating Mr. Gangi, that is, the IRS's satisfaction of the first *Powell* factor, and their contention that this investigation is being conducted in bad faith.  Thus, setting aside my own views of the substantive merits of these issues, I would be justified in deciding those issues adversely to the petitioners in reliance upon the preclusive effect of the decisions of the New Jersey and Kansas courts.

By contrast, the latter three *Powell* factors are inquiries specific to each summons.  Resolution of whether the information

-24-

sought in each of the four summonses challenged by the petitioners here is relevant to the investigation of Mr. Gangi, whether the information sought by the IRS is already in its possession, and whether the IRS has followed the legally required administrative steps depends upon the specific facts of each summons.  Because such questions present issues of fact distinct from those decided in the previous cases, preclusion is inapplicable.  However, as described above, my review of the merits of these issues leads me to the conclusion that the IRS has satisfied the second, third, and fourth *Powell* factors.

### IV.   CONCLUSION

For the reasons set forth more fully above:

(1)   The motions to vacate the orders entered on June 15, 2010, allowing petitions to quash the summons in Case Nos. 14-cv-10116 (Dkt. No. 9) and 14-cv-10117 (Dkt. No. 6), are hereby GRANTED;

(2)   The petitions to quash the summonses filed in Case Nos. 14-cv-10114, 14-cv-10115, 14-cv-10116, and 14-cv-10117 are hereby DENIED; and

(3)   The motion to enforce the IRS summons in case No. 14-cv-10114 (Dkt. No. 29, pertaining to all cases) is hereby GRANTED.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT